IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| JAMES STEVENS *et al.*, | : |
| Plaintiffs, | : |
| v. | : CASE NO.: 7:24-CV-27 (WLS) |
| 3 SQUARES DINER LLC, | : |
| Defendant. | : |

## ORDER

The Parties jointly petition for Final Approval of Collective Action Settlement Agreement (Doc. 39). And Plaintiff moves, unopposed, for an Award of Attorney's Fees and Costs (Doc. 38). For the following reasons, both Motions are **GRANTED**.

### I.  BACKGROUND

This is a Fair Labor Standards Act ("FLSA") case against 3 Squares Diner LLC, a company which owns and operates a chain of 24-hour diner restaurants throughout southwest Georgia. (Doc. 1 ¶ 11). James Stevens, a former employee of 3 Squares, filed the Complaint (Doc. 1) in March 2024. He alleges that 3 Squares violated the FLSA by failing to pay him and other similarly situated employees overtime and unlawfully deducting 30-minute lunch breaks from their wages, while requiring them to work during the same period. (*Id.* ¶¶ 3–4). Stevens brings a putative FLSA collective action seeking unpaid wages, liquidated damages, and attorney fees and costs. (*Id.*)

Since the lawsuit was filed, other Plaintiffs have opted in to the lawsuit. (*See generally* Docs. 6, 7, 17, & 18). These Plaintiffs are: Jessica McCall, Briana Palmer, Breanna Hobgood, Santanna Hobgood, Brandy Apperson, and Janice Wilson. (*Id.*)

1

On October 14, 2024, Stevens moved for conditional certification. (Doc. 24). Initially, 3 Squares opposed. (*See generally* Doc. 26).[1] Yet, on December 18, 2024, Parties filed a Joint Notice of Settlement. (Doc. 32). The Court denied the Motion for Conditional Certification as moot and ordered the Parties to submit settlement documents. (Doc. 33).

In February 2025, the Parties moved for preliminary approval of their Proposed Settlement Agreement. (Doc. 36). Under its terms, 3 Squares agreed to pay up to $55,000 to members who opt in. (Doc. 36-3 at 5). This amount is to be distributed "in a manner proportionate to the amount of unpaid meal period wages each collective member allegedly earned." (*Id.* at 5). 3 Squares also agreed to pay $5,000 to Stevens in exchange for a general release. (*Id.* at 6).

A few weeks later, the Parties moved to conditionally certify their proposed collective and authorize their proposed notice procedures. (*See generally* Doc. 37). The Court found that the Parties had shown a reasonable basis to treat the proposed collective employees as similarly situated. (*Id.* at 7–8). So it conditionally certified a collective under 29 U.S.C. § 216(b). (*Id.* at 8). And it found that the proposed notice procedures were sufficient and appropriate. (*Id.*) The Court authorized the Parties to notice the collective members in accordance with the procedures described in the Proposed Settlement Agreement, ordered them to do so, appointed Lemberg Law as class counsel, and appointed CPT Group as the Settlement Claims Administrator. (Doc. 37 at 12–13).

After preliminary approval, the CPT Group notified the collective. In March 2025, 3 Squares provided CPT Group with a list of 239 collective members. (Doc. 39-5 ¶ 5). CPT then emailed and mailed the Notice Packets. (*Id.* ¶ 7). After the Court conditionally certified the collective, the Parties notified the collective. (Doc. 39-5 ¶ 7). The Notice Packet gave recipients sixty days to opt-in or object. (*Id.*)

After the notice period, the Parties filed this Motion for Final Approval. (Doc. 39). Their Motion includes the Declaration of Tanner Nicodemus—a Case Manager for CPT. (*See* Doc. 39-5). He declares that CPT received 67 consent forms from collective members.

---

[1] As the Court discusses below, 3 Squares no longer opposes conditionally certifying collective. (Doc. 36-2 at 8).

(*Id.* ¶ 11). It received no objections. (*Id.* ¶¶ 12–13). As a result, 67 collective members will be issued settlement checks for a total amount of $20,557.25. (*Id.* ¶ 14).

In its February 5, 2025 Order, the Court also preliminarily approved the Proposed Settlement Agreement (Doc. 36-3). After reviewing the agreement and the Parties' submissions, the Court found that there was a bona fide dispute and that the proposed financial settlement represented a fair and reasonable compromise of Plaintiffs' claims. (*Id.* at 9–12). But the Court declined to make any final determination until after the appropriate motions for final approval had been filed.

The Court now considers the Parties' Joint Petition for Review and Approval of Settlement in accordance with FLSA.

## II.   ANALYSIS

The FLSA protects workers from substandard wages and oppressive work hours. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982). When an employee sues privately for back wages under FLSA and settles, a district court can approve that settlement only after scrutinizing its fairness. *Id.* at 1353. Courts should approve if the settlement agreement promotes the Court's general policy of encouraging the settlement of litigation. *Id.* at 1354.

To determine whether a settlement is fair, the Court considers: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and amount of discovery completed; (4) the probability of Plaintiff's success; (5) scope of possible recovery; and (6) Counsel's opinions. *Leverso v. SouthTrust Bank of Ala. Nat. Assoc.*, 18 F.3d 1527, 1530–31 n.6 (11th Cir. 1994).[2] In addition to evaluating the settlement agreement as it pertains to the existing claims, FLSA also requires judicial review of the reasonableness of counsel's legal fees to assure that counsel is compensated adequately and there is no conflict of interest tainting the amount the wronged employee recovers. 29 U.S.C. § 216(b); *Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1543 (11th Cir. 1985).

---

[2] The Eleventh Circuit in *Leverso* did not state that district courts must apply these six factors. Rather, the Court said, "the district court was required to determine that [the FLSA settlement agreement] was fair, adequate, reasonable, and not the product of collusion" and "thoroughly" did so by applying these six factors. Because the Court agrees the six factors are useful in making its fairness decision, it uses them here.

**A. The Settlement Agreement**

The Court previously found that there was neither fraud nor collusion (Doc. 37) and so finds again here. "There is a presumption of good faith in the negotiation process . . . [w]here the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion . . . Further, where the case proceeds adversarially, this counsels against a finding of collusion. *See CHIS, LLC v. Peerless Indem. Ins. Co.*, No. 5:14-CV-277, 2016 WL 9185305, at *3 (M.D. Ga. Nov. 17, 2016); *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014).

Party representations indicate the absence of fraud and collusion. The Parties here engaged in "arms-length mediation" where both were adequately represented. (Doc. 39-2 at 10). "Plaintiff was represented by counsel experienced in collective and class action litigation who zealously and vigorously represented the interests of the Plaintiff and the Collective." (*Id.*) "Defendant was represented by . . . a highly regarded law firm that skillfully negotiated on behalf of their clients." (*Id.*) And the Parties reached the settlement "with the assistance of a neutral mediator," further supporting the absence of collusion. (*Id.*) Therefore, the Court again finds there was neither fraud nor collusion.

The complexity, expense, and likely duration of the litigation counsel toward approving the settlement agreement. There would be "outstanding discovery, dispositive motions, pretrial proceedings, and a trial" if this case did not settle. (Doc. 39-2). The Parties also maintain there is a great risk "Plaintiff and the Collective would not be able to obtain a recovery greater than that provided by the Settlement" which is currently "undiminished by further litigation expenses." (*Id.*) Indeed, Plaintiffs' counsel moves for attorney fees and costs settlement of $35,000 based on their legal work completed at the time of the motion for approval. (Doc. 38). Meanwhile, collective members who opted-in stand to receive "a payment that is approximately <u>double</u> their alleged unpaid wages." (Doc. 43). In other words, the instant motion provides more than sufficient recovery for collective members while preventing further expense associated with the litigation and ensuring the members' recovery is undiminished by such costs.

The stage of the proceedings and amount of discovery completed ensured that the Parties made an informed decision to settle. They reached the settlement agreement after

substantial discovery into the merits, including production of "timesheets, W-2 forms, check stubs, tax documents, schedules, job descriptions, and employee lists for each of Defendant's nine restaurant locations." (Doc. 36-2 at 12). The Parties aver that "each had a clear picture of the strengths and weaknesses of their case, the amount of potential damages at stake, and of the legal and factual defenses that Defendant would likely raise at trial." (Doc. 39-2 at 12). The Court finds the Parties had reached a point in the proceedings and discovery where they could make intelligent decisions about whether and how to settle the case. Hence the stage of proceedings counsels toward acceptance of the settlement agreement.

The likelihood of Plaintiffs' success at trial counsels toward accepting the settlement agreement. The Parties explain "Plaintiff faced a significant risk of recovering from Defendant at trial and there is a bona fide dispute between the Parties." (*Id.* at 13). 3 Squares opposed conditional certification of the collective and it is unclear whether Plaintiff would be able to certify the collective at trial. The collective also would have relied on testimony of numerous employees at trial, which 3 Squares already began discrediting via their affidavits. (Doc. 26). And damages calculation at trial is more challenging than in negotiations. "Parties assumed for settlement purposes that every 30-minute meal period reflected in Defendant's records should be compensated," but at trial Plaintiff would have had to prove that employees did not work during these unpaid periods—a daunting task. And 3 Squares still maintains its meal period deductions were proper. The challenges faced by Plaintiff are real and counsel toward acceptance of the settlement agreement.

The scope of possible recovery supports accepting the settlement agreement. The Court reaches this decision after ordering a hearing on the matter of recovery provided to collective members. At first, the Court cautioned that the consent rate appeared low, sitting at 28%. This rate lowered the collective's recovery from $55,000 to around $20,000. (Docs. 36-3 & 39-5). So the Court ordered a hearing on this issue. (Doc. 40). Before that hearing, however, the Parties submitted a supplemental memorandum adequately addressing the issue. (Doc. 43). The Parties showed that other courts have recognized a "typical opt-in rate in FLSA collective actions is in the range of 14% to 25%." (Doc. 43 (citing *Rodriguez v. Belfor USA Grp., Inc.*, No. 22-CV-02071, 2025 WL 1474758, at*10 (N.D. Cal. May 21, 2025)). The Parties also cite an FTC report finding "the median calculated claims rate was 9%" for a sample of 149

5

consumer class action cases from large class action administrators. (Doc. 43-1 at 11). Using these examples as benchmarks, the instant opt-in rate of 28% is sufficient. A high number of collective members will receive adequate recovery. The recovery here is nearly double the amount of their unpaid wages. (Doc. 43). Such recovery is sufficient to accept the agreement.

Finally, the opinions of Counsel support accepting the settlement agreement. "Absent fraud, collusion, or the like, the district court 'should be hesitant to substitute its own judgment for that of counsel.'" *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). As previously established, the Court found neither fraud nor collusion in this case. Hence the Court will not substitute its own judgment for that of counsel. And "[c]lass Counsel believes the Settlement is fair, reasonable, and adequate." (Doc. 39-2 at 15).

Counsel for both Parties have reviewed the agreement before the Court thoroughly; it is reasonable for both the Court and Counsel to conclude that Plaintiff would recover damages comparable to those he might have received at trial. Consequently, the Court finds that Plaintiffs' FLSA claim settlement is fair and reasonable.

**B. Attorney Fees**

The Court finds the $35,000 in attorney fees and costs awarded to Plaintiffs' Counsel within the settlement agreement also fair. To encourage private enforcement, Congress created a fee-shifting provision in the FLSA which states: "The court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). When a statute or rule of law permits an award of reasonable attorney fees to the prevailing party, a court should utilize the lodestar method in computing the appropriate fees. *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1298–99 (11th Cir. 1988).

Under the lodestar method, a court determines the objective value of a lawyer's services by multiplying the hours reasonably expended by a reasonable hourly rate. *Id.* at 1299 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). A "*reasonable hourly rate*" is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Id.* The burden is on the party seeking fees to produce "specific and detailed evidence" demonstrating the reasonableness of the requested amount.

6

*Id.* at 1303. The burden to prove a reasonable hourly rate is not light. "Hours reasonably expended" are those that are not "excessive, redundant, or otherwise unnecessary" and are performed by an attorney who has exercised "billing judgment." *Id.* at 1301 (quoting *Hensley*, 461 U.S. at 434, 437). So "a lawyer may not be compensated for hours spent on activities for which he would not bill a client of means who was seriously intent on vindicating similar rights, recognizing that in the private sector the economically rational person engages in some cost benefit analysis." *Id.*

The settlement agreement would award $35,000—to be paid by 3 Squares—for counsel's work. (Doc. 38). Counsel documents 126.1 hours worked on this case, all of which appear reasonable. (Doc. 38-1 at 6). Attorneys seek "reduced hourly rates of $350-400 which are consistent with other wage and hour fee awards in this District." (*Id.*) Plaintiffs' lodestar under this calculation would be $41,032.50. (*Id.*) Thus, Plaintiffs' Counsel will take a fee reduced by 15% on top of the already reduced hourly rate. The Court finds the rate is reasonable.

Additionally, the hours spent are reasonable. Plaintiffs' Counsel list specifically how their time was spent on this matter. These activities include "interviewing Plaintiff and other employees of the Defendant . . . preparing the Complaint . . . serving written discovery requests . . . reviewing extensive document productions made by Defendant" and other activities of a common thread: all were the kinds of activities a rational person in the private sector intent on vindicating similar rights would pay for their attorney to complete in furtherance of that goal. (Doc. 38-1 at 7). Therefore, the award of attorney fees and costs is fair and reasonable.

### C. Payment to Plaintiff Stevens

The Parties' settlement agreement would provide the payment of $5,000 to Plaintiff James Stevens "in exchange for his agreement to generally release all claims against Defendant." (Doc. 39-1 at 4). At first blush, this payment appeared analogous to an incentive payment to a named plaintiff, which the Eleventh Circuit forbade in *Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244 (11th Cir. 2020). *Johnson* held that Supreme Court precedent requires "[a] plaintiff suing on behalf of a class . . . cannot be paid a salary or be reimbursed for his personal expenses." *Id.* (citing *Internal Imp. Fund Trs. v. Greenough*, 105 U.S. 527 (1881); *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116, (1885)). The Eleventh Circuit reasoned "the modern-day

7

incentive award for a class representative is roughly analogous to a salary" and "present[s] even more pronounced risks than [] salary and expense reimbursements" because they "are intended not only to compensate class representatives for their time, but also to promote litigation by providing a prize to be won." *Id.* at 1257–58. So for a separate payment to Stevens to be proper, it must be distinguishable from an incentive payment: it must be neither a salary nor a bounty.

The Court therefore ordered supplemental briefing. (Doc. 42). The Parties complied. (Doc. 43). And the Court dedicated the bulk of its fairness hearing to this issue. (Doc. 46). At the hearing, the Court inquired how the $5,000 payment to Stevens is distinguishable from an incentive payment. Plaintiffs argued that *Johnson* was about a Plaintiff receiving more pay solely because they brought the case. An incentive payment functions as a bounty when the Plaintiff receives additional payment, but their release does not give up anything differently than the other class members. Indeed, the Plaintiff in *Johnson* "want[ed] to be compensated for the time he spent litigating the case," "a bonus for bringing the suit." *Johnson* 975 F.3d at 1259. In other words, the Plaintiff, when compared to other members of the class, gave nothing up and wanted more in return.

Here, Stevens does give something up: he provides 3 Squares with a general release. (Doc. 39-1 at 4). This general release has value which may be fairly placed at $5,000. At the fairness hearing, Parties averred that Stevens was terminated before the FLSA action commenced. Under the FLSA "it shall be unlawful for any person to discharge . . . any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter." 29 U.S.C.A. § 215. Stevens has a plausible retaliation claim which renders a general release valuable. The general release is subjectively valuable too, because at the hearing Counsel for 3 Squares stated that 3 Squares is seeking to "buy their peace" with the $5,000 payment for a general release.

Thus the $5,000 payment is neither a salary nor a bounty for two reasons. First, Stevens is differently situated from the other collective members: he was terminated, while others were not. Second, the 3 Squares will make this payment for valuable consideration: a general release from all of Stevens's claims, including a plausible retaliation claim. Hence the Court finds the $5,000 payment to Stevens is not an incentive payment and is therefore permissible.

*Johnson* applied the rule set out in *Pettus* and *Greenough* to modern class actions where an incentive payment was made from a common fund. *Johnson* 975 F.3d at 1256. *Greenough* warned that permitting salary payments would present "too great a temptation to parties to intermeddle in the management of valuable property or funds in which they have only the interest of creditors." *Internal Imp. Fund Trs. v. Greenough*, 105 U.S. 527, 538 (1881). And *Johnson* read *Pettus and Greenough* to "limit[] the types of awards that attorneys and litigants may recover from the [common] fund." *Johnson* 975 F.3d at 1256. While the Court has already determined that Stevens's $5,000 payment is neither an incentive payment, bounty, nor salary, it will emphasize a representation made by Parties in their briefing: "There is no common fund here." (Doc. 43 at 4). Hence there is no temptation to intermeddle in the management of a valuable common fund. And the limits set out in *Pettus and Greenough* apply specifically to cases involving a common fund. Because Stevens's $5,000 payment is neither an incentive payment, bounty, nor salary and there is no common fund, the Court finds it permissible under *Johnson*.

Accordingly, the Court finds the Parties' FLSA settlement agreement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Lab., Emp. Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1355 (11th Cir. 1982).

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Parties' Joint Petition for Final Approval of Collective Action Settlement Agreement (Doc. 39) and Plaintiff's Unopposed Motion for an Award of Attorney's Fees and Costs (Doc. 38). Plaintiff's Complaint (Doc. 1) is **DISMISSED WITH PREJUDICE** upon notice of payment of the settlement amount and attorney fees. Counsel shall immediately file written notice on the docket to notify accordingly. An order of dismissal will then be entered.

**SO ORDERED**, this 19th day of December, 2025.

  /s/ W. Louis Sands  
  **W. LOUIS SANDS, SR. JUDGE**
  **UNITED STATES DISTRICT COURT**